**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HENRY UNSELD WASHINGTON,** | : | **Civil No. 4:08-CV-1283** |
| | : | |
| **Plaintiff** | : | **(Judge Jones)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **JAMES GRACE, et al.,** | : | |
| | : | |
| **Defendants** | : | |

**REPORT AND RECOMMENDATION**

## I.   Introduction

The tragic, tortured trajectory of this litigation defies easy description.  The background of this troubled litigation brought by an admittedly troubled litigant began more than four years ago, on July 7, 2008, when the plaintiff, a state prisoner proceeding *pro se*, commenced this action by filing a complaint in federal court. (Doc. 1.)  Eleven months later, on June 29, 2009, Washington elaborated upon these claims when he filed an amended complaint further detailing his claims and concerns. (Doc. 22.)

The plaintiff's 2009 amended complaint was a confusing, prolix document.  It named approximately 132 defendants, and set forth 320 factual averments of alleged violations of the plaintiff's rights.  Many of the alleged acts which were the subject

of the plaintiff's July 2009 amended complaint were more than 10 years old, spanning conduct that reached as far back as 1997, and in many instances it was impossible to determine which of the more than 130 named defendants were alleged to have committed the acts set forth in the complaint. The complaint then alleged that these actions constituted Eighth Amendment violations relating to lack of medical care and use of excessive force by prison officials, due process violations, negligence and medical malpractice.

This court was initially assigned responsibility to oversee this case on June 23, 2010. After examining the plaintiff's first amended complaint, on June 24, 2010, we notified the plaintiff that many of these allegations were subject to dismissal and directed the plaintiff to file an amended complaint. Our screening order was expressly intended to simplify and add clarity and focus to Washington's complaints. (Doc. 33.) Regrettably, the order had just the opposite effect upon Washington.

Washington initially responded to this order by requesting a six-month extension of time in which to file an amended complaint. (Doc. 34.) When we denied this request (Doc. 35.), Washington filed a second amended complaint on August 19, 2010. (Doc. 40.) Far from addressing the concerns originally cited by the court, Washington's second amended complaint actually exacerbated and compounded those concerns. The second amended complaint named 159 defendants

and contained 368 separately numbered paragraphs.  These allegations were detailed in a voluminous 135 pages.

After being notified of inadequacies in this pleading, Washington filed yet another complaint.  (Doc. 47.)  This complaint constituted Washington's third amended complaint in this matter.  (Id.)  While Washington's third amended complaint had fewer pages than his second amended complaint, Compare (Doc. 48, pp.82.) with (Doc. 40, pp.135.), this result appeared to be largely a function of a bizarre expedient:  Washington's use of minutely small handwriting in drafting the complaint.  Thus, the two complaints were substantively identical and the third amended complaint retained all of the fundamental flaws which were previously cited by the court as grounds for dismissal of Washington's prior complaints.

The third amended complaint, like the second amended complaint and all of Washington's prior pleadings, was a confused, confusing and prolix document.  This third amended complaint, like Washington's prior pleadings, attempted to name 159 correctional officials as defendants. (Doc. 48.)  Like the prior fatally flawed complaints in this case, this third amended complaint also contained 368 separately numbered paragraphs setting forth various factual averments.  (Id.)  As was the case with Washington's prior pleadings, many of these averments related to alleged conduct which fell far beyond the applicable statute of limitations.  (Id.)

Furthermore, the third amended complaint continued to name defendants and recite claims relating to dozens of alleged events which occurred outside this district, and over which venue is entirely lacking.   (Id.)   Finally, like his prior complaints, Washington's third amended complaint contained an odd array of assertions and claims, many of which are nothing more than labels and conclusions, and the formulaic recitation of the elements of a cause of actions.   As for the remaining averments in the complaint, many of these assertions were often bizarre sexually explicit recitals which were subject to being stricken under Rule 12(f) of the Federal Rules of Civil Procedure, or accounts of various secret meetings that Washington recalled having conducted with prison supervisors while undergoing psychiatric treatment.

We dismissed this complaint, and Washington appealed.  In October 2011, the court appeals affirmed the dismissal of 354 of the 368 averments set forth in the complaint, but remanded for further proceeding on 14 specific allegations. Washington v. Grace, 455 F. App'x 166, 171 (3d Cir. 2011) ("Specifically, the following paragraphs of the third amended complaint contain allegations of retaliation, excessive force, and sexual assault that appear to state a claim upon which relief could be granted: 88, 103-04, 108, 112, 118, 122, 131, 145, 221, 239, 339, and 356-57." )

Following remand, we engaged in months of efforts with Washington endeavoring to secure from the plaintiff a simple amended complaint which conformed to the appellate court's ruling. These efforts were unavailing. Indeed, Washington insisted that the task of filing an amended complaint would take a year or more to complete. In part, these delays were inspired by concerns that seemed more imagined than real since Washington alleged that he had been working 12 to 16 hours a day to complete his amended complaint, but asserted that he had experienced daily heart attack symptoms, frequent collapses, nose bleeds that have continued unabated for days, and episodes of memory loss spanning many hours. Ultimately we were compelled to conclude that further amendment was futile, and ordered the complaint's 14 allegations identified by the court of appeals served upon the defendants.

Those defendants have now commenced discovery but have encountered an irreconcilable obstacle, the refusal of the plaintiff to participate in discovery. Thus, this case comes before the court on the defendants' second motion to impose sanctions against the plaintiff for refusing to answer questions during a deposition that this court has authorized and ordered to take place. The plaintiff previously refused to answer questions during his first deposition in January 2013. In response, the defendants moved for sanctions based upon that refusal, and the plaintiff

thereafter assured the court that he understood his obligation to submit to a deposition. Notwithstanding his recognized obligation, the plaintiff attempted to condition his compliance on being provided with permanent single cell housing at a different prison in Pennsylvania. We entered an order directing the plaintiff to submit to a deposition and answer the defendants' questions, and we rejected the plaintiff's baseless attempt to condition his compliance upon a change in his prison housing. In our order, we expressly advised the plaintiff that continued failure to answer questions at a deposition would be grounds for further sanctions, including the dismissal of this litigation.

Following entry of this order, the defendants rescheduled the plaintiff's deposition for March 19, 2013. At this deposition, the plaintiff once again refused to provide any meaningful answers to the defendants' counsel's questions. The defendants have responded by moving for imposition of sanctions and dismissal of the plaintiff's claims. (Doc. 132.) That motion for sanctions is now pending before the court.

In considering this motion, we are mindful of the tortured posture of this action following a halting and confused history that is due almost entirely to the litigation decisions made by the plaintiff. We are also mindful of the plaintiff's persistent refusal to participate meaningfully in discovery, and his repeated invitations to the

court to consider ever expanding and increasingly bizarre allegations about matters that bear no relation to the claims that actually remain in this case.  In consideration of these relevant factors, and our finding that the plaintiff has simply refused, without any justification, to comply with the court's orders and the obligations imposed by the Federal Rules of Civil Procedure to comply with his discovery obligations in this case, we now recommend that the defendants' motion for sanctions be granted, and that this case be dismissed with prejudice.[1]  We explain this recommendation in greater detail below.

## II.   **Background**

The plaintiff in this action, Henry Unseld Washington, is a state inmate, who has filed multiple, prolix, confusing, and voluminous complaints, which have through a judicial screening process been reduced to 14 discrete factual averments, upon which he is now proceeding.  Washington v. Grace, 455 F. App'x 166, 171 (3d Cir.

---

[1] We will also recommend that the district court deny the plaintiff's recently filed motions for a protective order and preliminary injunction.  (Docs. 131 and135.)  In these motions, the plaintiff once again attempts to condition his compliance with discovery obligations, this time by entry of a protective order that he claims is necessary to avoid a variety of tortious misconduct perpetrated by, in the plaintiff's own words, "SCI-Greene DOC staff-n-medical professionals, and their spouses, biological relatives, neighbors, in laws, friends, co-workers, army buddies, etc." (Doc. 131.)  As with many of the plaintiff's recent filings, these particular motions are frequently conclusory and marked by increasingly paranoid allegations regarding matters that simply have nothing to do with this lawsuit.

2011) ("Specifically, the following paragraphs of the third amended complaint contain allegations of retaliation, excessive force, and sexual assault that appear to state a claim upon which relief could be granted: 88, 103-04, 108, 112, 118, 122, 131, 145, 221, 239, 339, and 356-57.")

Even with the claims narrowed and clarified in this fashion, this litigation has failed to progress in any discernible way, despite the efforts of the defendants to conduct discovery into the plaintiff's remaining claims, and despite the court's repeated efforts to focus the plaintiff's attention on the specific claims that remain extant in this case. To the contrary, since this case was remanded by the appeals court, the plaintiff has obfuscated the remaining claims by endeavoring to file new, greatly expanded, and often fanciful allegations of institutional misconduct that the plaintiff perceives as being part of a seamless web of retaliatory misconduct by prison officials, their family members, neighbors, and other friends and acquaintances.[2] In

---

[2] By way of example, in a declaration that the plaintiff recently filed, he claims that his life has been placed in danger by a "combination of DOC staff-n-medical professionals who are currently being sued . . . or it's their biological relatives, spouse, in laws, friends, neighbors, army buddies, someone they grew up with, [or who] attend the same church . . . ." (Doc. 129.) Although the court of appeals clearly limited the plaintiff's remaining claims when it remanded the action to the district court, the plaintiff has disregarded the express limitations in that remand order. Indeed, following remand, the plaintiff endeavored to enlarge his claims to include over 150 defendants, regarding old and new claims that would have been developed in a complaint hundreds of pages long that the plaintiff estimated would have taken him approximately one or more years to

these failed efforts to magnify the scope of this litigation, the plaintiff invites the court, repeatedly, to address frequently incredible and conclusory allegations about conduct that is claimed to have occurred at a prison in the Western District of Pennsylvania, and none of which appears plausibly related to the claims centered in this district.[3]

By his own admission, Washington is an older inmate who suffers from an array of serious physical and mental health issues, which he candidly acknowledges cause him to become forgetful, to lose the ability to complete tasks in a timely

---

prepare.  Eventually, on February 7, 2012, we concluded that Washington's efforts to further amend the complaint were untimely, futile, and prejudicial to the interests of justice.  We thus denied Washington's motions for enlargements of time to complete this task, consolidated the plaintiff's two cases within Civil No. 08-1283, and directed service of the plaintiff's third amended complaint on the defendants.  (Doc. 87.)

[3] While the plaintiff has routinely invited this court to consider new and extraordinary allegations of physical and sexual misconduct by prison and medical officials in the Western District of Pennsylvania, we note that the plaintiff appears to have commenced at least one proceeding in the United States District Court for the Western District of Pennsylvania.  In that action, Civil No. 2:11-CV-1046 (LPL) (W.D. Pa.), the plaintiff sued many of the corrections and medical officials about whom he also complains in this action. Although we have no knowledge regarding the posture of that particular litigation, we observe for the plaintiff that claims regarding alleged misconduct occurring at the State Correctional Institution at Greene, where Washington is currently housed, would properly be filed in the Western District of Pennsylvania, where venue properly lies.  See 28 U.S.C. § 118(c) (providing that the Western District of Pennsylvania includes Greene County).

manner, and even to experience recurring dreams and visions that he is being subject to extraordinary forms of mistreatment that are simply difficult to credit.  (Doc. 131, at 3.)  It appears that in at least some instances throughout this litigation, the plaintiff's dreams and visions may have formed the basis for his increasingly paranoid, extraordinary, and often bizarre allegations against prison and medical officials, including allegations that prison officials have contaminated his prison cell with "renowned cancer-causing juice," 455 F. App'x at 168; repeated allegations that prison officials have somehow managed to shrink his genitals; and, more recently, that a prison medical official in the Western District of Pennsylvania responding to Washington's claims of heart attack symptoms "attempted to place his mouth on the nipple of my chest for the sake of withdrawing 'CHEST MILK' from me." (Doc. 129, at 2).  Many of the allegations that make their way into Washington's various filings with this court are repetitious, and frequently include little more than conclusory and remarkable claims that scores of prison and medical personnel, and those close to them, have subjected him to physical and sexual assault.

While the plaintiff has persisted in filing expansive and voluminous pleadings, declarations, and other documents containing allegations that frequently have the quality of being more imagined than real, the defendants have endeavored to pursue basic discovery from the plaintiff regarding his remaining 14 claims.  Unfortunately,

the plaintiff has steadfastly refused to answer any factual question posed to him during two depositions that this court has authorized and ordered to take place. The plaintiff's repeated failure to participate in this process, while at the same time repeatedly attempting to expand the scope and nature of the remaining claims in this case, has now completely frustrated the resolution of this action.

On November 29, 2012, we entered an order that authorized the defendants to take the plaintiff's deposition by video conference. (Doc. 111.) The defendants thereafter scheduled the plaintiff's deposition for January 28, 2013. At this deposition, the plaintiff refused to answer questions that the defendants' counsel asked until counsel had read a declaration that the plaintiff had written. Even after counsel read the declaration, the plaintiff refused to answer further questions and, in fact, refused to speak at all. (Doc. 118, Deposition Transcript.)

In response, the defendants filed a motion for sanctions pursuant to Rule 37 of the Federal Rules of Civil Procedure, requesting either that the court enter an order sanctioning the plaintiff for his failure to participate in discovery, or otherwise directing him to "comply with his next schedule deposition, or suffer additional sanctions, including possible dismissal." (Doc. 116, at 3.) In response, the plaintiff conceded his obligation to comply with the deposition, and claimed that he was "willing to provide the defendants with a deposition." (Doc. 119, at 1.) However, the

plaintiff then qualified his compliance with this basic litigation responsibility by stating that he would only submit to a deposition if he were provided  permanent single cell housing in a different state prison, and guaranteed what he deems to be adequate medical treatment.  (Id.)

On February 26, 2013, we entered an order granting the defendants' motion to compel, and denying the plaintiff's request to qualify his compliance with our order and his obligation to submit to a deposition.  (Doc. 120.)  We further ordered the plaintiff to submit to a deposition within 30 days or some other time limit selected by the defendants, and we warned Washington that his failure to comply with the order could result in sanctions, including the dismissal of the lawsuit.  (Id.)  The plaintiff filed a motion asking the court to reconsider this ruling (Doc. 121.), but this document was little more than a restatement of Washington's conclusory allegations regarding his fear of suffering retaliation if he gave a deposition, and an amplified request that the court order that the plaintiff be jailed "outside of Northern, Central, N-Western, PA, [with] single cell status, medical treatment." (Doc. 122.)  Finding that the plaintiff had provided no persuasive basis for the court to reconsider its ruling directing the plaintiff to submit to a deposition without condition, we denied Washington's motion. (Doc. 123.)

The defendants scheduled the plaintiff's renewed deposition for March 19, 2013. On that date, at approximately 10:30 a.m., the plaintiff was placed under oath and a deposition taken pursuant to video conference was commenced. (Doc. 134.) After defendants' counsel went over preliminary instructions regarding the way that the deposition would be conducted, the plaintiff responded by stating that his life was in danger at the prison, expressing fear that he would be killed or abused "in some way for being here." (Id. at 7.) The plaintiff gave no explanation whatsoever regarding this dramatic statement – which essentially echoes the generic, fanciful, and conclusory allegations that the plaintiff has made throughout this litigation – but instead insisted on repeating some version of this declaration in response to every question that was posed to him. Thus, in response to repeated questions asking the plaintiff for basic information such as his name and inmate number, the plaintiff simply responded by claiming that his life was in danger at the prison. (Id., *passim*.) Paradoxically, while denying that he could testify, the plaintiff at one point erratically stated that he was "willing and raring to give a deposition," (id. at 11), and yet he never provided a single substantive answer even to general background questions, resorting instead to repeating his claimed fear that his life was in danger, and repeating his generic allegations regarding abuse he claims to have suffered. (Id., *passim*.) After 10 minutes of this back-and-forth, the defendants' counsel stated on

13

the record that it had become clear that the plaintiff was refusing to answer any of his questions, that the deposition would accordingly be ended, and that the defendants would be moving for sanctions seeking the dismissal of the litigation.[4]  (Id. at 13.)

The defendants filed their second motion for sanctions on April 2, 2013.  (Doc. 132.)  In support of that motion, the defendants have filed a brief outlining the legal support for an order dismissing the lawsuit due to the plaintiff's failure to submit to a deposition, and with a copy of the transcript of the deposition.  (Docs. 133, 134.) In what has been the tragically typical course of this litigation, the defendants' motion has inspired a spate of pleadings by Washington, (Docs. 135-137), in which the plaintiff seeks to enjoin the defendants and inexplicably alleges, *inter alia*, that "plaintiff['s] buttock becomes the DOC staff-n-medical professionals playground." (Doc. 137, ¶3.)

Construing these pleadings as a response to the sanctions motion, and as confirming proof of why sanctions are now necessary, we conclude that this matter is ripe for resolution and, upon consideration, we now find that the defendants' motion should be granted, and the case dismissed.

---

[4] During the deposition, defendants' counsel also reminded the plaintiff on more than one occasion about this court's order directing the plaintiff to submit to the deposition.  (Id. at 10.)  Counsel also advised the plaintiff that if he persisted in refusing to answer questions, the defendants would move for sanctions and dismissal of the litigation.  (Id.)

In our judgment, it is inappropriate to require the defendants to continue to defend against litigation that has been pending for nearly four years, in proceedings where the plaintiff repeatedly refuses to participate in discovery relating to the few claims that do remain before the court while at the same time repeatedly and persistently attempting to expand the scope of this litigation to encompass unrelated claims about conduct that allegedly occurred outside of this district.  The plaintiff's utter failure to comply with the most basic obligations imposed on him as the litigant who commenced this civil action; the refusal of the plaintiff to focus his litigation efforts on the claims actually pending in this court; the highly dubious nature of the plaintiff's general allegations; and the plaintiff's unexcused failure to follow court orders now causes us to find that the litigation should be dismissed with prejudice.[5]

---

[5] Perhaps recognizing that his refusal to answer counsel's questions during his last deposition would have adverse consequences in this case, the plaintiff filed a motion for a protective order based on allegations that he has recently been mistreated by employees at SCI-Greene.  (Doc. 131.)  This motion bears striking resemblance to many of the plaintiff's other filings in this case, which are marked by arrays of conclusory claims and allegations, many of which are often bizarre, particularly when read in the context of the plaintiff's numerous filings in this action over the past two years.  Whether the plaintiff's latest motion for relief was filed as a calculated attempt to forestall the imposition of sanctions, or whether it represents simply the latest in a series of extraordinary filings in this court about events that the plaintiff claims or believes have taken place in the Western District of Pennsylvania, we find no basis to grant the plaintiff's motion for a protective order in this case.

## III.   <u>Discussion</u>

Federal Rule of Civil Procedure 37(b)(2)(B) provides that a district court may sanction a party's failure to comply with a discovery order in a number ways, including by dismissing the action in whole or in part.  Fed. R. Civ. P. 37(b)(2)(B)(v); <u>see also</u> <u>Fattah v. Beard</u>, 214 F. App'x 230, 232 & n.1 (3d Cir. 2007) (sanctions for failure to give deposition testimony, in violation of court order, may result in sanctions that "may include dismissal of the case").   In addition, Rule 37(d) authorizes a court to impose sanctions if a party fails to appear for his deposition after being served with proper notice.   Fed. R. Civ. P. 37(d)(1)(A)(I).   Rule 37(d)(3) provides that sanctions that may be imposed for failure to attend a properly notice deposition may include any of the sanctions listed in Rule 37(b)(2)(A)(i)-(vi), which includes dismissal.

In cases where a party has failed or refused to submit to a deposition on more than one occasion, despite having been served with notice to do so, and despite the entry of court orders compelling the party to attend and provide answers to deposition questions, the Third Circuit has found that dismissal may be an appropriate sanction. <u>Fattah</u>, 214 F. App'x at 232-33 (affirming district court order dismissing action brought by *pro se* inmate where the inmate, on two separate occasions, refused to come out of his cell to attend his deposition, and refused to respond to questions

addressed to him).  At the same time, the Third Circuit has cautioned that "the sanction of dismissal is extreme and should be reserved for cases where it is justly deserved . . . ."  Id. at 233 (citing Ware v. Rodale Press, Inc., 322 F.3d 218, 221-22 (3d Cir. 2003)).

The decision about the appropriate sanction to impose for a party's failure to comply with court orders and authorized discovery is committed to the district court's discretion.  That discretion regarding sanctions is broad, but is guided by case law. In cases where a sanction of dismissal is under consideration, district courts are to be guided by six factors that the Third Circuit enunciated in Poulis v. State Farm Fire and Casualty Company, 747 F.2d 863, 868 (3d Cir. 1984), which should find support in the court record.  See Fattah, 214 F. App'x at 233; see also Curtis T. Bedwell and Sons, Inc. v. Int'l Fidelity Ins. Co., 843 F.2d 683, 691 (3d Cir. 1988).  The Poulis factors include: (1) the extent of the party's personal responsibility; (2) the extent of prejudice to the adversary caused by the failure to meet scheduling orders and to respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal; and (6) the meritoriousness of the claim or defense.  Poulis, 747 F.2d at 868.  Although these factors guide the court's decision regarding the sanction of

dismissal, each factor need not be satisfied in order for the district court to find that dismissal is warranted.  Ware, 322 F.3d at 221; see also Fattah, 214 F. App'x at 233.

In exercising this discretion "there is no 'magic formula' that we apply to determine whether a District Court has abused its discretion in dismissing for failure to prosecute." Lopez v. Cousins, No. 10-1877, 2011 WL 2489897, *3 (3d Cir. June 23, 2011)(quoting Briscoe v. Klem, 538 F.3d 252 (3d Cir. 2008)).  Therefore, "[i]n balancing the Poulis factors, [courts] do not [employ] a . . . 'mechanical calculation' to determine whether a District Court abused its discretion in dismissing a plaintiff's case. Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir.1992)." Briscoe v. Klaus, 538 F.3d at 263.  Consistent with this view, it is well-settled that " 'no single Poulis factor is dispositive,' Ware, 322 F.3d at 222, [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint.' Mindek, 964 F.2d at 1373." Briscoe v. Klaus, 538 F.3d at 263.  Moreover, recognizing the broad discretion conferred upon the district court in making judgments weighing these six factors, the court of appeals has frequently sustained such dismissal orders where there has been a pattern of dilatory conduct by a *pro se* litigant who is not amenable to any lesser sanction.  See, e.g., Emerson v. Thiel College, supra; Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007); Reshard v. Lankenau Hospital, 256 F. App'x 506  (3d Cir. 2007); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007).

In this case, a dispassionate assessment of these factors causes us to find that dismissal of this longstanding, and often delayed, litigation is now warranted. In so finding, we are mindful that the Third Circuit Court of Appeals remanded 14 discrete claims to the district court after finding that Washington may have alleged a limited set of claims upon which relief could plausibly be granted. Upon having this matter referred to this court, we endeavored to provide the plaintiff with every reasonable opportunity to amend his complaint to focus on those remanded claims, and to prosecute the claims that the appeals court found sufficient to survive dismissal at the pleading stage.

Despite our efforts and patience with the plaintiff, however, the litigation of the plaintiff's remanded claims has essentially stalemated out, as the plaintiff has resorted instead to a seemingly unbounded and quixotic effort to transform this litigation to encompass new claims against new parties at a correctional facility located outside of the Middle District of Pennsylvania – frequently through allegations of conduct that is simply bizarre and exceedingly difficult to credit. Our repeated efforts to encourage the plaintiff to focus his litigation efforts on the claims actually before this court have, essentially, been ignored or rebuffed. And now, the plaintiff has, on two occasions, utterly refused to submit to deposition questioning that was not only properly noticed by the defendants, but which was expressly ordered by this court.

We find ourselves left with no clearly effective, or fair sanction, other than the extreme sanction of dismissal in the face of the plaintiff's repeated refusal to participate in discovery and to prosecute his claims in accordance with court orders.

At the outset, a consideration of the first <u>Poulis</u> factor, the extent of the party's personal responsibility, shows that the delays in this case are entirely attributable to the plaintiff, who has failed to abide by court orders, and has now on two occasions failed to give any meaningful answer during depositions, and has made clear that he will not answer deposition questions unless his demands regarding his housing and medical treatment are met.  Simply put, the plaintiff cannot condition his obligation to comply with court orders and discovery obligations in this manner, and his effort to do so on two separate occasions makes clear that he bears full and exclusive responsibility for the delays and costs imposed in connection with his aborted depositions.

Similarly, the second <u>Poulis</u> factor– the prejudice to the adversary caused by the failure to abide by court orders–also calls for dismissal of this action.  Indeed, this factor–the prejudice suffered by the party seeking sanctions–is entitled to great weight and careful consideration.  As the United States Court of Appeals for the Third Circuit has observed:

> "Evidence of prejudice to an adversary would bear substantial weight in
> support of a dismissal or default judgment." <u>Adams v. Trustees of N.J.</u>

> Brewery Employees' Pension Trust Fund, 29 F.3d 863, 873-74 (3d
> Cir.1994) (internal quotation marks and citation omitted).  Generally,
> prejudice includes "the irretrievable loss of evidence, the inevitable
> dimming of witnesses' memories, or the excessive and possibly
> irremediable burdens or costs imposed on the opposing party."  Id. at
> 874 (internal quotation marks and citations omitted). . . .  However,
> prejudice is not limited to "irremediable" or "irreparable" harm. Id.; see
> also Ware v. Rodale Press, Inc., 322 F.3d 218, 222 (3d Cir.2003); Curtis
> T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co., 843 F.2d 683, 693-94
> (3d Cir.1988). It also includes "the burden imposed by impeding a
> party's ability to prepare effectively a full and complete trial strategy."
> Ware, 322 F.3d at 222.

Briscoe v. Klaus, 538 F.3d at 259-60.

In this case the plaintiff's repeated delays during this litigation in order to prepare exorbitantly large pleadings that bear no obvious relationship with the narrow and discrete claims actually at issue in this action, coupled with his blatant refusal to comply with court orders, or to answer legitimate deposition questions, now delay the resolution of this action that has been pending for nearly four years.   In such instances, dismissal of the case clearly rests in the discretion of the trial judge.  Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007) (failure to timely serve pleadings compels dismissal); Reshard v. Lankenau Hospital, 256 F. App'x 506  (3d Cir. 2007) (failure to comply with discovery compels dismissal); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007) (failure to file amended complaint prejudices defense and compels dismissal).

When one considers the third <u>Poulis</u> factor-the history of dilatoriness on the plaintiff's part–it becomes clear that dismissal of this action is now appropriate.  In this regard, it is clear that "'[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness in complying with court orders.' <u>Adams,</u> 29 F.3d at 874." <u>Briscoe v. Klaus,</u> 538 F.3d at 260-61 (some citations omitted).  Here, the plaintiff has failed to timely file pleadings, and  comply with orders of the court, and now has failed twice to answer questions during his properly notice deposition, which this court has ordered him to do, and this case is stymied by the plaintiff's refusal to abide by instructions from the court.

The fourth <u>Poulis</u> factor–whether the conduct of the party or the attorney was willful or in bad faith–also cuts against the plaintiff.  At this juncture, when the plaintiff has failed to comply with instructions of the court directing the plaintiff to take specific actions in this case, the court is compelled to conclude that the plaintiff's actions are not accidental or inadvertent but instead reflect an intentional disregard for this case and the court's orders and the plaintiff's basic discovery obligations.

While <u>Poulis</u> also enjoins us to consider a fifth factor, the effectiveness of sanctions other than dismissal, cases construing <u>Poulis</u> agree that in a situation such as this case, where we are confronted by a *pro se* litigant who will not comply with

22

the rules or court orders,  lesser sanctions may not be an effective alternative. See, e.g., Briscoe v. Klaus, 538 F.3d 252, 262-63 (3d Cir. 2008); Emerson, 296 F.3d at 191.  This case presents such a situation, where the plaintiff's status as a *pro se* litigant severely limits the ability of the court to utilize other lesser sanctions to ensure that this litigation progresses in an orderly and fair fashion.  In any event, by entering our prior orders, and making clear to the plaintiff his obligations in this case, we have endeavored to use lesser sanctions, but to no avail.  The plaintiff still declines to obey court orders, and otherwise ignores his responsibilities as a litigant. Since lesser sanctions have been tried, and have failed, we believe that only the sanction of dismissal reasonably remains available to the court.

Finally, under Poulis we are cautioned to consider one other factor, the meritoriousness of the plaintiff's claims.  In our view, consideration of this factor cannot save the plaintiff's case from dismissal.  Indeed, the court has already expressed doubt about the potential merits of the plaintiff's claims, and the court of appeals found that only a limited number of the plaintiff's claims could properly survive a screening analysis on the pleadings.  These claims were remanded to this court, but the plaintiff's complete failure to focus his litigation efforts on these claims, and his total disregard for the court's orders and his obligations to provide

discovery relating to those claims, makes it impossible either to test the merits of the claims filed, or to litigate those claims in any way.

Furthermore, it is apparent that Washington does not wish to address the factual merits of the 14 historic allegations that survived from his original 368 paragraph civil complaint.  Instead, Washington apparently views this case as an empty vessel into which he can pour his current, and often, quixotic, concerns.  Thus, Washington's current pleadings only address matters occurring at SCI Greene, events which are entirely unrelated to the handful of remaining claims in this lawsuit.

Moreover, as to these new matters which repeatedly dominate Washington's attention to the exclusion of his discovery obligations in this lawsuit, many of these matters have the quality of something more imagined than real.  For example, Washington now repeatedly insists that he is the subject of forced male mammary lactation experiments by prison doctors at SCI Greene, and alleges that "plaintiff buttock becomes the DOC staff-n-medical professionals playground." (Doc. 137, ¶3.)

"A federal court may *sua sponte* dismiss a complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) when the allegations within the complaint 'are so attenuated and unsubstantial as to be absolutely devoid of merit, ... wholly insubstantial, ... obviously frivolous, ... plainly unsubstantial, ... or no longer open to discussion.'  Hagans v. Lavine, 415 U.S. 528, 536-37, 94 S.Ct.

1372, 39 L.Ed.2d 577 (1974) (internal citations and quotation marks omitted)." DeGrazia v. F.B.I., 316 F. App'x 172, 173 (3d Cir. 2009). The court's authority to dismiss claims that "are wholly devoid of merit" is not linked to a plaintiff's *in forma pauperis* status. Id. Rather what controls here is our assessment regarding whether "the  complaint is subject to dismissal because it presents a cause of action that ' "relies on "fantastic or delusional scenarios." Neitzke v. Williams, 490 U.S. 319, 328, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).' DeGrazia v. F.B.I., 316 F. App'x 172, 173 (3d Cir.2009)." Gilboy v. Mellow, 3:CV-12-1237, 2012 WL 3957977 (M.D. Pa. June 29, 2012) report and recommendation adopted, 3:12-CV-1237, 2012 WL 3959270 (M.D. Pa. Sept. 10, 2012). Here, while Washington declines to provide discovery on the handful of allegations in his original complaint which were found not to be frivolous, he insists instead on "present[ing] a cause of action that ' "relies on "fantastic or delusional scenarios." Neitzke v. Williams, 490 U.S. 319, 328, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).' DeGrazia v. F.B.I., 316 F. App'x 172, 173 (3d Cir.2009)." Gilboy v. Mellow, 3:CV-12-1237, 2012 WL 3957977 (M.D. Pa. June 29, 2012) report and recommendation adopted, 3:12-CV-1237, 2012 WL 3959270 (M.D. Pa. Sept. 10, 2012). On these facts, we conclude that in this case all of the Poulis factors call for dismissal of this case.

## III.   **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendants' motion for sanctions based upon the plaintiff's repeated violations of this court's orders directing him to comply with discovery and to submit to a deposition be granted. It is further recommended that the plaintiff's complaint be dismissed with prejudice as a sanction for this repeated refusal to comply with court orders, the discovery process, and his repeated efforts to delay resolution of the discrete claims that were remanded to the court by the Third Circuit Court of Appeals. The plaintiff's utter failure to comply with court orders and discovery obligations is compounded by his repeated efforts to transform this litigation to include ever more expansive and incredible allegations of misconduct occurring outside of the Middle District of Pennsylvania, instead of focusing on than the discrete 14 claims that were remanded to this court. For these reasons, and the reasons more fully set forth in the within report, we submit that dismissal of this action with prejudice is warranted at this time. Finally, it is recommended that the district court deny the plaintiff's recently filed motions for a protective order and preliminary injunction. (Docs 131 and 135.)

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen

(14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 9th day of April 2013.

_**S/Martin C.  Carlson**_____
Martin C. Carlson
United States Magistrate Judge

27