IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HENRY UNSELD WASHINGTON, | : | |
| | : | 4:08-cv-1283 |
| Plaintiff, | : | |
| | : | Hon. John E. Jones III |
| v. | : | |
| | : | Hon. Martin C. Carlson |
| JAMES GRACE, *et al.*, | : | |
| | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

### May 1, 2013

### THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:

Pending before the Court in this troubled, four-year old litigation is the

Report and Recommendation ("R&R") (Doc. 138) of Chief Magistrate Judge

Martin C. Carlson recommending that the Defendants' Second Motion for

Sanctions (Doc. 132) be granted and that this action be dismissed with prejudice

based on the Plaintiff's utter failure to comply with court orders and discovery

obligations.  Since the filing of the R&R, *pro se* Plaintiff Henry Unseld

Washington ("Plaintiff" or "Washington") has filed three submissions with the

Court that can be construed as "objections" thereto, (Docs. 141-143), however

these submissions, like all of Washington's other recent submissions, contain no

1

availing legal argument in opposition the Magistrate Judge's recommendations but rather recite fanciful and patently dubious allegations of mistreatment and retaliation that Washington claims to be suffering at the hands of his jailers.

In any event, this matter is ripe for our review.  For the reasons that follow, the R&R shall be adopted in its entirety, and this matter shall be dismissed with prejudice.

## I.    STANDARD OF REVIEW

When, as here, objections are filed to the report of a magistrate judge, the district court makes a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objections are made.  28 U.S.C. § 636(b)(1); *United States v. Raddatz*, 447 U.S. 667, 674-75 (1980).  The court may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations.  *Id.*  Although the standard of review is *de novo*, 28 U.S.C. § 636(b)(1) permits whatever reliance the district court, in the exercise of sound discretion, chooses to place on a magistrate judge's proposed findings and recommendations.  *Raddatz*, 447 U.S. at 674-75; *see also Mathews v. Weber*, 423 U.S. 261, 275 (1976); *Goney v. Clark*, 749 F.2d 5, 7 (3d Cir. 1984).

## II.    BACKGROUND

As aptly stated by Magistrate Judge Carlson, "[t]he tragic, tortured trajectory of this litigation defies easy description," (Doc. 138, p. 1), however within his R&R the Magistrate Judge describes with detail the procedural milieu underpinning this case. Thus, we shall not endeavor to recite the same herein, but rather provide the reader with an abbreviated summary of the matter's history.

This case was filed by Plaintiff on July 7, 2008. (Doc. 1). Eleven months later, on June 29, 2009, Washington elaborated upon his claims by filing an amended complaint. (Doc. 22). This prolix, confusing document contained 320 factual averments against approximately 132 defendants. Many of the factual allegations harkened back ten years to 1997, and in many instances it was impossible to determine which of the more than 132 defendants were alleged to have committed the acts. Broadly construed, the complaint alleged claims of Eighth Amendment violations relating to lack of medical care and use of excessive force by prison officials, due process violations, negligence and medical malpractice.

In June of 2010, we referred this difficult matter to Magistrate Judge Carlson for pre-trial management. After a careful examination of the Plaintiff's complaint, the Magistrate Judge entered a screening order, intended to simplify and add clarity

3

and focus to Washington's complaints.  (Doc. 33).  Washington's initial response

to the Order was to request a 6-month extension of time to file an amended

complaint.  (Doc. 34).  When this request was denied, Washington filed a second

amended complaint on August 19, 2010.  (Doc. 40).  Far from addressing the

concerns originally cited in the screening order, Washington's second amended

complaint actually exacerbated and compounded these concerns, inasmuch as the

pleading named 159 defendants and contained 368 separately numbered

paragraphs.

　　　After being notified of inadequacies in this pleading, Washington filed a

third amended complaint.  (Doc. 47).  While this document spanned fewer pages

(82) than the second amended complaint (135), this result was achieved by

Washington's use of minutely small handwriting in drafting the document.  Thus,

the two complaints were substantively identical and the third amended complaint

retained all of the flaws that had been previously by the Magistrate Judge as

grounds for dismissal of Washington's prior complaints.  We dismissed this

complaint and Washington appealed.  On October 2011, the Court of Appeals

affirmed the dismissal of 354 of the 368 averments set forth in the complaint, but

remanded for further proceedings on 14 specific allegations.  *Washington v. Grace*,

455 F. App'x 166, 171 (3d Cir. 2011)("Specifically, the following paragraphs of

the third amended complaint contain allegations of retaliation, excessive force, and sexual assault that appear to state a claim upon which relief could be granted: 88, 103-104, 108, 112, 118, 122, 131, 145, 221, 239, 339 and 356-357.").

Following this remand, Magistrate Judge Carlson engaged in months of efforts with Washington, endeavoring to secure from him a simple amended complaint which conformed to the appellate court's ruling. These efforts were entirely unavailing. Washington insisted that the task of filing the amended complaint would take a year or more to complete. As aptly noted by the Magistrate Judge, these delays were inspired by concerns that seemed more imagined than real, since Washington alleged to have been working 12 to 16 hours a day to complete his amended complaint, yet asserted that he had experienced daily heart attack symptoms, frequent collapses, nose bleeds that continued unabated for days, and episodes of memory loss spanning many hours. Ultimately, the Magistrate Judge was compelled to conclude that asking Washington for a further amendment was futile and ordered service upon the Defendants of the 14 allegations identified by the Court of Appeals as plausibly stating a claim.

After service, the Defendants commenced discovery but then encountered an irreconcilable obstacle, namely Washington's flat refusal to participate in a deposition. Before the Magistrate Judge on the instant R&R is the Defendants'

second motion to impose sanctions against the Plaintiff for refusing to answer

questions during a deposition that the Court had authorized and ordered to take

place.  The Plaintiff previously refused to answer questions during his first

deposition in January 2013. In response, the Defendants moved for sanctions (Doc.

116)  and the Plaintiff thereafter assured the Court that he understood his

obligation to submit to a deposition.  (Doc. 119).  Notwithstanding this recognized

obligation, the Plaintiff attempted to condition his compliance on being provided

with a permanent single cell housing at a prison different than his current place of

incarceration.  Magistrate Judge Carlson entered an Order directing Plaintiff to

submit to a deposition and answer the Defendants' questions, and rejected his

baseless attempt to condition his compliance upon a change in prison housing.  In

that Order, Magistrate Judge Carlson expressly advised the Plaintiff that continued

failure to answer questions at the deposition would be grounds for further

sanctions, including dismissal of this case.  (Doc. 120).

Following the entry of this Order, the Defendants rescheduled the Plaintiff's

deposition for March 19, 2013.  The transcript of that deposition, which is

appended to the Defendants' Motion for Sanctions, reveals that the Plaintiff flatly

refused to provide any meaningful answers to defense counsel's questions.  Rather,

Plaintiff repeatedly responded that his life was in danger at the prison and that he

could not answer questions.  After several attempts to achieve meaningful

responses from the Plaintiff, with absolutely no progress, defense counsel

terminated the deposition and filed the Motion for Sanctions, requesting dismissal

of the case.

Following briefing on the Motion for Sanctions, Magistrate Judge Carlson

issued the instant R&R, recommending dismissal with prejudice.  For the reasons

that follow, we shall adopt the Magistrate Judge's recommendation.

## III.    DISCUSSION

As discussed above, Plaintiff, a state inmate, has filed multiple, prolix,

confusing and voluminous complaints, which have, through judicial screening,

been reduced to 14 discrete factual averments, upon which he is now proceeding.

*See Washington v. Grace*, 455 F. App'x 166, 171 (3d Cir. 2011).  Even with the

claims narrowed in this fashion, the litigation has been unable to progress in any

meaningful way, despite the efforts of the Defendants to conduct discovery into the

Plaintiff's remaining claims, and despite the Court's repeated efforts to remind the

Plaintiff of his obligations to participate in the discovery process.  To the contrary,

since this case was remanded by the Court of Appeals, the Plaintiff has frustrated

every attempt by the Court and defense counsel to advance his case past the

pleading stage.   Instead, Plaintiff, who by his own admission suffers from an array

7

of physical and mental health issues, has used the Court of Appeals remand to file documents with the Court that contain bizarre and incredible allegations about conduct that is claimed to have occurred at a prison at the State Correctional Institution at Greene.   Notably, Plaintiff contends that prison officials have contaminated his cell with "renowned cancer-causing juice," 455 F. App'x at 168, that prison officials have managed to shrink his genitals, and more recently, that a prison medical official at SCI-Greene responded to Plaintiff's heart attack symptoms by "attempt[ing] to place his mouth on the nipple of my chest for the sake of withdrawing 'CHEST MILK' from me."  (Doc. 129, at 2).

Despite these fanciful allegations contained in Plaintiff's repeated filings, the Defendants attempted to proceed with discovery in an orderly fashion.  This attempt was blocked by Plaintiff at every turn.  Most recently, on March 19, 2013 at approximately 10:30 a.m., the Plaintiff was placed under oath and a deposition taken pursuant to video conference was commenced.  (Doc. 134).  After defense counsel went over preliminary instructions regarding the way the deposition would proceed, the Plaintiff responded by stating that his life was in danger at the prison, and expressing fear that he would be killed "in some way for being here."  (Doc. 134, p. 7).  Plaintiff gave no explanation for this dramatic statement, and continued to respond in this fashion to basic questions posed by defense counsel regarding

8

Plaintiff's name and inmate number.  Paradoxically, while denying that he could testify, the Plaintiff at one point erratically stated that he was "willing and raring to give a deposition," (Doc. 137, p. 11), but never provided a single substantive answer to the questions posed by defense counsel.  After 10 minutes of this back and forth, Defendants' counsel terminated the deposition.  Thus, on April 2, 2013, Defendants filed their Motion for Sanctions pursuant to Fed. R. Civ. P. 37, requesting dismissal of this action as a sanction.

Fed. R. Civ. P. 37(b)(2)(B) provides that a district court may sanction a party's failure to comply with a discovery order in many ways, including by dismissing the case in whole or in part.  Fed. R. Civ. P. 37(b)(2)(B)(v); *See also Fattah v. Beard*, 214 Fed. App'x 230, 232 & n. 1 (3d Cir. 2007)(sanctions for failure to give deposition testimony, in violation of court order, may result in sanctions that "may include dismissal of the case.").  In addition, Rule 37(d)(3) authorizes a court to impose sanctions if a party fails to appear for his deposition after being served with proper notice.  *See* Fed. R. Civ. P. 37(d)(1)(A)(I).  Rule 37(d)(3) provides that sanctions that may be imposed for failure to attend a properly noticed deposition may include any of the sanctions listed in Rule 37(b)(2)(A)(i)-(vi), which includes dismissal.

As discussed by the Magistrate Judge, in cases where a party has failed or refused to submit to a deposition on more than one occasion, despite having been served with notice to do so, and despite the entry of court orders compelling the party to attend and provide answers to deposition questions, the Third Circuit has found that dismissal may be an appropriate sanction. *Fattah*, 214 Fed. App'x 232-33 (affirming district court's order dismissing action brought by *pro se* inmate where the inmate, on two separate occasions, refused to come out of his cell to attend his deposition, and refused to respond to questions addressed to him). At the same time, the Third Circuit has cautioned that "the sanction of dismissal is extreme and should be reserved for cases where it is justly deserved . . ." *Id*. at 233 (citing *Ware v. Rodale Press, Inc.*, 322 F. 3d 218, 221-22 (3d Cir. 2003)).  The decision to impose the sanction of dismissal rests within the discretion of the district court.  While that discretion is broad, it is guided by the six factors enunciated by the Third Circuit in *Poulis v. State Farm Fire and Casualty Company*, 747 F. 2d 863, 868 (3d Cir. 1984).   There is no "magic formula" utilized when considering the *Poulis* factors, and no single factor is dispositive, nor must all be satisfied in order to dismiss a complaint.  *See Briscoe v. Klem*, 538 F. 3d 252 (3d Cir. 2008); *Ware*, 322 F. 3d at 222.  Moreover, recognizing the broad discretion conferred upon the district court in making judgments weighing the six

*Poulis* factors, the Court of Appeals has frequently sustained such dismissal orders where there has been a pattern of dilatory conduct by a *pro se* litigant who is not amenable to any lesser sanction. *See, e.g., Tillio v. Mendelsohn*, 256 Fed. App'x 509 (3d Cir. 2007); *Reshard v. Lankenau Hospital*, 256 Fed. App'x 506 (3d Cir. 2007); *Azubuko v. Bell National Organization*, 243 Fed. App'x 728 (3d Cir. 2007).

Within the R&R, the Magistrate Judge undertakes a careful review of the *Poulis* factors, with which we fully agree. Thus, we shall not recite all of the points made by Magistrate Judge Carlson but will emphasize a few salient areas of his analysis. First, the delays in this case have been entirely attributable to the Plaintiff, who has failed to abide by Court orders, and has now on two occasions refused to submit to a deposition in any meaningful or substantive way. Moreover, as the docket demonstrates, Plaintiff's dilatory conduct has been rampant and persistent throughout the pendency of this matter, marked by frequent requests for exorbitant extensions of time to file pleadings and other submissions. Furthermore, Plaintiff's conduct is obviously prejudicing the Defendants' ability to defend against this lawsuit in any meaningful manner, inasmuch as they have been unable to ascertain any discovery from Plaintiff. In addition, the Defendants have born the costs imposed in connection with the aborted depositions. Finally, and perhaps most importantly, we agree with the Magistrate Judge than sanctions other

11

than dismissal have been considered but will not be effective.  Washington has

flatly refused to follow every order issued by the Magistrate Judge since the

remand of this action, and rather than address the factual merits of the 14

allegations that survived from his 368 paragraph complaint, he has used this case

as an empty vessel into which he can pour is current, and often quixotic, concerns.

In fact, most of Washington's recent filings address matters only occurring at SCI-

Greene, which are entirely unrelated to the handful of remaining claims in this

lawsuit.[1]  Simply stated, dismissal is the only appropriate sanction available to the

Court in this tortured, complicated, and unfortunate situation.  We and the Court of

Appeals have given the Plaintiff every possible opportunity to litigate his potential

claims, and he has frustrated or blocked every method we have employed.

Accordingly, based on the foregoing analysis and the detailed analysis of

Magistrate Judge Carlson as set forth in his cogent and thorough R&R, we shall

dismiss this case with prejudice.  An appropriate Order shall issue.

---

[1] Moreover, SCI-Greene is located in the Western District of Pennsylvania, thus any civil rights claims Washington believes he may have arising out of conduct at that institution could not be properly litigated here in the Middle District.